**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

United States of America,

Plaintiff,

v.

Bert Andrew Vest,

Defendant.

No. CR-25-01158-001-PHX-DJH

**ORDER**

At issue is Defendant Bert Vest's Motion in Limine to Exclude Testimony of Firearms/Toolmarks Expert. (Doc. 61). The United States of America ("Government") has filed a Response, which makes the Motion fully briefed. The Court also held a Daubert hearing on the Motion on July 1, 2026, and heard testimony from the Government's proposed expert. (Doc. 112). For reasons set forth below, the Court will deny the Motion.

## I.    Background

Vest is accused of the unlawful killing of Jaavon Conger with malice aforethought with the use of a firearm. (Doc. 34 at 1). The offense occurred on June 25, 2022. (*Id.*) On that same day, the Government contends that Vest also assaulted Jarron Conger, the deceased's brother, in a way that resulted in serious bodily injury. (*Id.*) The events on June 25, 2022 led to a six-count indictment against Vest for the following: (1) second degree murder; (2) discharge of a firearm during and in relation to a crime of violence; (3) assault with a dangerous weapon; (4) discharge of a firearm during and in relation to a crime of violence; (5) assault resulting in serious bodily injury; and finally (6) possession of a

firearm by a prohibited possessor.  (Doc. 1 at 1).  Vest has pled not guilty on all counts. Vest's Motion in Limine and the Court's ruling is discussed below.

## II.    Legal Standard

Federal Rule of Evidence ("FRE") 702 provides for the following:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702. Under this standard, the Court may only permit testimony that is both relevant and reliable.  Testimony is relevant if it will "assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  Put differently, the testimony must be "tied to the facts of the particular case." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993).

When it comes to scientific knowledge, the Court must determine if the reasoning or methodology used is scientifically valid and is applied properly to the facts at issue. *Id.* at 589. The following four non-exhaustive factors have been identified by the Supreme Court as crucial considerations for this Court: (1) whether the theory or method employed by the expert has gained general acceptance in the relevant scientific community; (2) whether the method has been subject to peer-review and publication; (3) whether the method employed can be and has been tested; and (4) whether the known or potential rate of error and the existence and maintenance of standards controlling the technique is acceptable. *Id.* at 592–94.  All four of the factors may not be equally applicable in every instance. *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 n. 4 (9th Cir.1995). For this reason, the trial court has broad discretion in determining whether the *Daubert* factors reasonably measure reliability in a given case. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 153 (1999). The objective of the gatekeeping requirement set forth in *Daubert* is to ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

As the *Daubert* standard pertains specifically to toolmark identification, courts generally have titled towards the admissibility of such testimony. David H. Kaye, *Firearm-Mark Evidence: Looking Back and Looking Ahead*, 68 Case W. Res. L. Rev. 723, 725–26 (2018). But the landscape of toolmark identification has experienced small eruptions of skepticism from courts as well. *United States v. Romero-Lobato*, 379 F. Supp. 3d 1111, 1116 (D. Nev. 2019) (providing a detailed list of courts to limit such testimony). However, the Court is aware of no court in this country that has found the toolmark identification method unreliable and precluded the testimony outright. Instead, courts have restricted experts from testifying that their conclusions are infallible, not subject to any rate of error, or subject to an exact statistical probability. *Id.* at 1117.

**III.    Discussion**

On March 31, 2026, the Government provided its Notice to the Court of its intent to use FBI forensic examiner Bryce A. Ziegler's ("Ziegler") testimony to match the bullet casings founds at the scene of the crime to the .40 caliber Smith & Wesson allegedly used to commit the crimes.  (Doc. 28).  Vest moves to exclude this testimony because he contends that the methodology used by Ziegler is unreliable.  (Doc. 61 at 7).  In other words, Vest believes that the subjectivity infused in the toolmark identification process naturally tenders the entire methodology unreliable.  (*Id.*)  In particular, he points to a 2024 study about the issues miring the methodology.  (*Id.*; *see also Id.* at 61-3, Ex. B, Maria Cuellar, et al., *Methodological Problems in Every Black-Box Study of Forensic Firearm Comparisons*, Law, Prob. & Risk 23:1 (2024) ("Cuellar article")). Notably, Vest does not attack Ziegler's expertise or education, choosing to focus instead on the methodology itself.

The Government responds that excluding toolmark identification testimony is the exception, not the rule. (Doc. 78 at 12–14). Further, the Government argues that the methodology can be tested, has been subjected to peer review, has a low rate of error, and that there are proper governable standards for such testimony.  (*Id.* at 16–22). Essentially, the Government argues that toolmark identification passes muster under *Daubert*.  The Court agrees.

The Court finds that all four non-exhaustive factors of *Daubert* have been met by Ziegler's proposed testimony. To address the initial question about the relevance of Ziegler's testimony, the Court concludes that the testimony is highly relevant. *Daubert*, 509 U.S. at 592–594. Evidence is relevant if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more [or less] probable than it would be without the evidence. Fed. R. Evid. 401. Ziegler is expected to testify at trial that the bullet casings found at the scene of the crime could possibly have come from the same gun found in the vicinity of the crime scene. (Daubert Hearing Tr., 13:9:44:52–9:45:14, July 1, 2026). The murder weapon allegedly used by Vest and that can be tied to his involvement in the shooting, is a factual issue that is outstanding pending the results of the trial. If Ziegler's testimony is taken to be true and accurate, it makes it more probable than not that Vest was the shooter. Therefore, it is relevant. Having determined the relevance of Ziegler's testimony, the Court will move on to the *Daubert* factors in order.

The Court finds that the first *Daubert* factor has been satisfied. The first *Daubert* factor about the reliability of a certain method turns on whether the technique can be tested. *Daubert*, 509 U.S. at 592–94. Ziegler testified at the Daubert hearing that toolmark identification is testable via the five-step process he outlined at the hearing and in his PowerPoint presentation. (Daubert Hearing Tr., 10:15:49–10:16:30; *see also* Government's Motion Hearing Exhibits, Ex. 11, Ziegler PowerPoint Presentation). He also explained the verification process to confirm his findings, usually done through blind verification or regular verification. (*Id.* at 36: 10:19:39–10:20:09). Additionally, there is general agreement among courts throughout this country that toolmark identification method is testable. *Romero-Lobato*, 379 F. Supp. at 1119. Thus, the Court finds that the first *Daubert* factor tilts in favor of allowing the testimony.

The second *Daubert* factor also favors the Government. The second *Daubert* factor asks whether the method has been subjected to peer review and publication. *Daubert*, 509 U.S. at 593–94. There is no doubt that the governing body for toolmark identification, the Association of Firearm and Tool Mark Examiners ("AFTE") publishes articles and

journals, and their materials are subject to peer review. *Romero-Lobato* 379 F. Supp. at 1119. Although briefly, Ziegler did mention during the Daubert hearing that the AFTE hosts conferences and publishes "new technology that comes out." (Daubert Hearing Tr., 43:10:30:45–10:31:20). Therefore, the second Daubert factor favors the admissibility of Ziegler's testimony.

The third *Daubert* factor also militates for the admissibility of Ziegler's testimony. The third factor asks after a technique's potential rate of error. *Daubert*, 509 U.S. at 594. At the hearing, Ziegler characterized the potential rate of error as "negligible." (Daubert Hearing Tr., 46:10:36:50–46:10:37:11). He further stated the limitations inherent in his testimony and that he would not and could not testify that a bullet casing was from a certain gun with "absolute certainty" or use words like "match" to describe his opinions. (*Id.* at 46:10:35:49–46:10:36:31). And, as the Government points out in its Response to Vest's Motion, the error rate is "exceedingly low," and "hovers around 1.5%[.]" (Doc. 78 at 17). The Government's position is confirmed by courts throughout the country. *Romero-Lobato*, 379 F. Supp. at 1119. Moreover, with the qualifications placed on Ziegler's testimony that he will not use phrases such as "absolute certainty" and "match," the Court finds that the third factor favors admission.

The fourth factor also favors admission of Ziegler's testimony. The fourth *Daubert* factor asks if there are standards that control the technique's operation. *Daubert*, 509 U.S. at 594. Based on Ziegler's testimony at the hearing, the Court finds ample evidence to support the assertion that there are governable standards in place. Importantly, there is an accrediting body for toolmark identification. (Daubert Hearing Tr. at 48: 10:39:19–10: 39:55). According to Ziegler, the accrediting body determines if the identification process conforms to both national and international standards. (*Id.*) However, Vest focused his cross-examination on the subjectivity of the methods employed in his attempt to negate the governable standards in place for toolmark identification. Specifically, Vest focused on a 2024 study expressing concern about subjective bias in the toolmark comparison process. (Daubert Hearing Tr. at 84:11:53:18–11:53:57). To counter this assertion, Ziegler stated:

"I think there is just as much research to support that that is not an issue as much as there is it is." (*Id.* at 85:11:54:16–11:54:28). In the Court's own examination of the underlying caselaw, the Court finds that subjectivity does not mandate a preclusive effect on expert testimony. *Romero-Lobato*, 379 F. Supp. at 1120. If an expert has sufficient knowledge, experience, or training about pertinent subject matter, the expert can testify. *See* Fed. R. Evid. 702. Therefore, the Court finds that Ziegler's testimony passes the test set forth by the fourth factor.

And finally, the last factor certainly favors admission of Ziegler's testimony. The last factor of the Daubert analysis asks if a technique enjoys general acceptance within the relevant scientific community. *Daubert*, 509 U.S. at 594. Ziegler testified at the hearing that toolmark identification is accepted by the American Academy of Forensic Science and several international organizations as well. (Daubert Hearing Tr. at 47: 10:37:30–47:10:38:37). Besides, toolmark identification as a method, benefits from general acceptance. *Romero-Lobato*, 379 F. Supp. at 1122. So, the last factor of the *Daubert* analysis favors the Government and the admission of Ziegler's testimony.

Accordingly,

**IT IS ORDERED** that Vest's Motion in Limine to Exclude Testimony of Firearms/Toolmarks Expert (Doc. 61) is **denied.**

Dated this 6th day of July, 2026.

Honorable Diane J. Humetewa
United States District Judge

- 6 -